Good morning, Your Honors. May it please the Court, Jonathan Libby appearing on behalf of the Appellant Felipe Tapia-Romero. Your Honors, before I address the reporting condition, I'd like to briefly address our primary sentencing argument, which is that the District Court misapprehended its sentencing authority under Section 3553A. First off, the District Court refused to consider the cost of incarceration as a factor in sentencing, going so far as to say it's not something Article III judges should consider. In fact, the Sentencing Commission has already recognized that a judge, in fact, has the authority to consider the cost of incarceration in determining a sentence. Under Sections 5H1.1 and 5H1.4, these guidelines explain that home confinement might be appropriate in certain situations because it is less costly than incarceration. So the Sentencing Commission has already recognized it is something that courts may consider, and it was error for the District Court to refuse to consider it in this case. In addition, the Court – Having permission to consider, does that mean it's mandatory that the Court must consider? Well, I believe the Court certainly has to believe it has the authority to consider it. The Court does not – is not required, obviously, to reduce the sentence based on that, but it's a factor that the Court at least has to take into consideration. Was it taken up with the probation service before the PSR was prepared? I don't know, Your Honor. Well, did you waive it? I don't believe so, Your Honor, because it was specifically addressed during the sentencing hearing. Well, isn't that a little late? Not at all, Your Honor. It was – You get a plea or you get a verdict, and then you go have an interview, and you have a position that you want to assert. Is it fair to sandbag the officer that's making the pre-sentence report? Well, I – He's trying to do it impartially, and he's trying to do it legally. Well, obviously, Your Honor, it's the court that determines the sentence, and while – Malpractice for counsel not to bring it to his attention? Well, counsel brought it to the attention of the court and raised that as an argument. At the time of sentencing? At the time of sentencing, Your Honor, and I believe that's sufficient to preserve the issue. But there'd be no investigation of it? You know, if I were to say to the court on conviction, I have a very nice home, and I have a staff, and I'm a good guy, and I'll behave myself. Just give me one of those bracelets for my ankle, and everything will be okay. In fact, I live in a boarding house, so I'm a bum, and I take drugs. Now, how's the court going to work that all out at the last minute? Well, those are factual determinations, Your Honor. This is a legal determination. Yeah, but of course, they're not in a position to even proceed with it, is it? Well, Your Honor, it certainly – if the court – it was a legal argument that was presented to the court. The court would want – you ought to plead it as soon as you have an opportunity, and that's at the time that Theosaris was there. Well, that may – well, that may be, Your Honor, and he certainly had an opportunity to raise it at that time, but a defendant certainly also has the opportunity to raise it at the time of sentencing, and the court had an opportunity to rule on it, and in fact did address that issue, and said affirmatively that it – the court said affirmatively it did not have the authority to consider that. Did you stand back the government when you raised it at the last minute? I don't believe so, Your Honor. Is that the game plan? Your Honor, I don't believe there was any sandbagging here. It's an argument that was presented. It was a fair argument based on, I believe, what had been raised in the sentencing – beg your pardon? It was based on no facts. I would disagree with you, Your Honor. I mean, the cost of incarceration is a factor that could be considered in any case and is something that could be raised in any case. So putting aside the procedural issue of timing, could you in a capsule restate your argument on this point again? Yes. Before we get to the other issues. Certainly. Just to recap, the court indicated it did not have the authority to consider the cost of incarceration, that Article III judges may not consider that.  But the fact is that the cost of incarceration is something that courts may consider in determining the sentence. Under 5H1.1, 5H1.4, it notes that a court may decide to impose home confinement because it's less costly than imprisonment. Okay. Thanks. Well, we've got some other issues. We do, Your Honor. Turning to the reporting condition, Mr. Tapio was given a condition of supervised release that required that he report for instructions to his probation officer within 72 hours should he reenter the United States after being deported. This condition must also be read in conjunction with Standard Condition 4, which requires that he answer all inquiries and follow all instructions of his probation officer. This implicates the Fifth Amendment. Essentially, the condition requires that Mr. Tapio turn himself in should he illegally reenter the United States. Okay. There are a couple of sub-issues or preliminary issues that may affect whether we get to that merits issue of the Fifth Amendment. And one is, did he raise this issue at sentencing? He did not. Okay. So then I think the government, I don't know if they argued that specifically in this case, but in a number of cases they've argued there's a waiver. They have in some cases. And so perhaps you could address the waiver and also address ripeness and address the merits of it. We'll give you a little extra time. We've got three issues. Thank you, Your Honor. I'm playing now instead of four minutes, we've got eight minutes or something. Thank you. I'll give the government more time if the government's what it needs. In terms of the waiver issue, this issue was not waived. It was forfeited. And as a forfeited issue, it still can be reviewed by this court under plain error. We review it for plain error? For plain error. Okay, that's fine. Now we'll go on to ripeness. How do you view ripeness? The issue isn't going to rise unless he violates the law, I guess, by reentering after a deportation without permission. So is it right for us to consider it now? Well, I think that actually is looking at what we're challenging somewhat incorrectly. We're not attempting to challenge some hypothetical future revocation. What we're challenging here is the imposition of a supervised release condition and whether it was appropriate for the district court to impose a supervised release condition, which on its face. Do we have one that's facially unconstitutional for you to prevail? That is essentially what we are arguing, yes, that on the face of the condition it requires him. That's correct, Your Honor. Yes. And that's why we believe it's right. It was every case that's come out of this circuit has said that a defendant has the right to challenge a supervised release condition on direct appeal. And, in fact, in Gross, this court said, really, it's the only real opportunity a defendant has to challenge a supervised release condition. Okay. Well, look, let's say at least as one judge you've got me thinking it's not waived, it's a plain error issue, and that it's ripe for a facial challenge. So let's address the merits. Why is it a Fifth Amendment violation? Well, it's a Fifth Amendment violation because Mr. Tapia is essentially he will be compelled to turn himself in and answer. Is that testimonial? Well, it's testimony when read in conjunction with Standard Condition 4. The condition says that he must report for instructions to the probation officer. Standard Condition 4 says that he must. The probation officer has to speak. Does he have to speak? Well, I think when you look at the language report for instructions, I don't think that means someone can simply set foot in a probation officer and take a seat. I think. Does the face of the statute require him to say anything other than just report? Well. Listen to what his instructions say. No. On the face of it says he must report, which I submit means he must do more than simply show up. He must identify himself to a receptionist or somebody. Well, that's enough. It's a question of identity? That's all he has to do is walk in and say I'm Joe Blow? Well, yes. I mean, his mere presence, his identifying himself in mere presence in the United States, which of course the probation office is in, is sufficient to convict him of 1326, an illegal re-entry. Is that testimonial? How's that testimonial? Well, as I said, because he has to identify himself. But that said, when it says he must report for instructions, you must read that in conjunction with the standard condition, which says he must answer all inquiries and follow all instructions of the probation officer. But the probation officer, under the facts of this case now, has never even seen this man. That is likely correct. On the face of the statute, there's nothing to act on in terms of facts. It hasn't happened. For all I know, he's going to go to Mexico or someplace and stay there. And you're saying that's still unconstitutional. Well, that's because the condition on its face says he must turn himself in. And he must answer inquiries from his probation officer. But he doesn't have to turn himself in unless he comes back into the United States. That fact may never happen again. Well, that's true. He can go home and stay home in his native country. He may return to Mexico. So we're deciding a hypothetical case. He may come back. Well, but again, and if that's returning to the ripeness issue, Your Honor, every case in this circuit has said this is the only opportunity a defendant has. And if, in fact, the issue is not right, then you're depriving the defendant of his right to appeal. If it's facially unconstitutional, he has the opportunity now to challenge it. And that's what you're doing. Yes, Your Honor. If, in fact, he returns and violates the law and he gets nailed because the probation officer asked him some questions, if they're going to convict him of another crime in connection with the statement he made, he can assert the privilege. That's true. He can't self-incriminate? He certainly could if, in fact, he follows the condition. So it will be right then when it's not right now. Well, he'd be able to challenge the results of the condition, Your Honor. I don't believe he'd be able to challenge the condition itself. And this is a situation, for example, with the search condition, which the Supreme Court reviewed in Nights. The Supreme Court was able to rule on the consequences, the search that took place, this parole search that took place, but dropped the footnote, said we don't have the opportunity to address the propriety of the condition itself because that was not presented here, because that's not the path the case took. So if he doesn't have the opportunity to argue the condition out, he never really will have the opportunity to challenge that specific condition. I've got a question for you relating to that. And you shouldn't get off your best game in arguing here because the time says red, because we've said we're giving you more time, so don't worry about it. The fact is, if he's deported, aren't there ways he could come back legally, like with permission of the Attorney General? Technically, yes. Okay, so now if we're viewing the Fifth Amendment, and I realize that may not come up that often, but at least- Virtually, virtually every year. Possibility, it is possible. Yes. And so if we're dealing with a facial challenge to the statute under the Fifth Amendment rather than as applied challenge, why isn't a facial challenge defeated by the, a facial Fifth Amendment challenge, defeated by the fact that the statute on its, or the term on its face, may let him come back and give notice in circumstances where he's not incriminating himself in any way? Well, the condition says, should he return to the country after he's been deported? All right. So- And I'm saying, okay, let's say he's deported, and then he gets permission of the AG to come back. Come back to his mother's funeral. Okay. And he has to report in, but there's no conceivable way that, even if it is viewed as testimonial, that that's incriminating. I would agree with you, Your Honor. So then why doesn't that answer a facial challenge, and the Fifth Amendment issue has to be raised, it can be raised now facially, but why, if that answers it now, why isn't the incrimination part preserved for an as-applied challenge later? Well, because it's the incrimination part that's the problem. If he gets permission, then obviously this is never going to come up. He'll report, and presumably, if he gets permission, he's going to be ordered to report immediately to a probation officer or some governmental official who will essentially take custody of him the entire time he's here, and then walk him to the border and then send him back to Mexico. Under the condition, he has to self-report should he illegally reenter the United States, and that's the Fifth Amendment problem. The other's not a problem. He doesn't say illegally reenter, it says reenter. It does, but it's after he's deported, and the court was well aware that that means that he's well aware he cannot return to the country. There's another condition that says he may not return to the United States. He should stay out. Well, that's certainly the law, Your Honor, absolutely, absolutely. The problem is, you know, if he does come back in, if he does break the law, he still has Fifth Amendment rights. That's an interesting question. So, all right. Anything else you want to add on this, or does that? Your Honor, I'll not else submit. Okay. Thank you. We'll give you some time for rebuttal. Thank you. We'll give you two minutes for rebuttal after the government argues. Now, because we added more time, although your clock will say 10 minutes, you know, feel free to take 15 minutes if you need it. Thank you, Your Honor. Because these issues, as you know, we've got them in a whole bunch of cases, and we're drawing out a few counsel here to elaborate, and it will be a help to us. Thank you, Your Honor. And good morning. May it please the Court. Ronnie Katzenstein on behalf of the plaintiff appellee, United States of America. And I submitted a 28-J letter this morning. I had also provided it to defense counsel. I gave him the cites last night and provided the letter this morning. I just wanted to alert the Court to that. I've got the papers here, but it's difficult for me to juggle them at the last minute. Do they relate to the issues we've been talking about? They do. They relate to the rightness issue. And I would like to begin by addressing that, that being the issue that this Court indicated in its recent order that it wished to hear, particularly, about at argument this morning. The government's position, as you know, is that a defendant's challenge to the condition of his supervised release that he report is not ripe for determination at this time by this Court. The reason it's not ripe is, as the Court has indicated or suggested in its comments to defense counsel, the injury or threat of injury on which the claim is premised is conjectural and hypothetical at this time rather than being real or immediate. And I would take issue with defense counsel's comments a moment ago that this is a facial challenge to the condition. In his briefs, it's clearly an as-applied challenge to the condition. There's no suggestion here that the condition is not reasonably related to the offense of conviction or is improper for any other reason, or that defendant cannot comply with the condition. The claim is that if he complies, he should be immunized for complying with it. So in that sense, this is not a categorical objection to the condition. I would say that although it's the gu- Let me ask you a question. Yes. And I haven't read what's the package here yet with the 28-K left, and so I'll do that later. But why isn't it ripe now for a facial challenge? However, on a facial challenge, that we have to consider that he may be able to come back with permission, and it's not always going to be incriminating to report. And maybe there's also the issue raised by Judge Nelson's questions about whether the reporting is testimonial. But why isn't it ripe for a facial challenge? Because the law lets someone appeal the conditions of their sentence. Your Honor, I believe that this very distinction between a facial challenge and an as-applied challenge came up in two cases cited by Defendant Zinn and Davis, where the Court said, yes, as a general matter, we can review the condition of release, the challenged conditions of supervised release. But as to the implementation, that is not ripe. And the Court, again, held off on deciding what is precisely being challenged, I believe, in the briefs here. It's not a facial challenge. The Court could say, as a general matter, the condition is an appropriate condition. As a categorical matter, it is an appropriate condition. It's related to the offense of conviction. That is something that the Court could adjudicate at this time. But the specific question raised by defense counsel in his briefs is whether or not there's a Fifth Amendment violation, which will only occur under Fifth Amendment jurisprudence once questions are posed, the privilege is invoked, and then an appropriate invocation of the privilege is dishonored through seeking of some sort of sanction. That is a purely hypothetical situation here. There are many, many occurrences which must take place before those events rise to fruition. A defendant must complete his custodial portion of his sentence, which will not be completed until 2010. He must be deported. He must then return to the United States illegally and within the three-year period of his supervision. He must then invoke his privilege, and then the government must seek sanctions on the basis of that. Those are all contingencies which make any question of whether or not there is a Fifth Amendment, a right Fifth Amendment challenge here absolutely theoretical, hypothetical, and not ripe for adjudication in this case. Moreover, if, as defendant has suggested, he were to return to the United States and not — let's take the example of him not reporting, and therefore the government were to seek a sanction based on this condition, he could challenge the condition at that supervised release revocation proceeding at that time when the facts would have been developed. If he does report, again, the counsel suggests that there are — the infirmity with the condition arises out of conjunction between that condition and another condition requiring him to answer questions. Well, in that instance, he could — if a 1326 prosecution is initiated or a supervised release proceeding is initiated after he returns, he can challenge those statements at that time. The factual record would be developed. The injury would be concrete. It would be an appropriate time to challenge the supervised release condition at that time. So for all those reasons, we don't think that the condition is ripe for adjudication now. On the merits, as we've set forth in the brief, and unless the Court has questions, it is clear, I believe, through a very long line of authority, that the body, the physical presence is not testimonial and does not implicate the Fifth Amendment. So there would certainly have been no error in this condition, let alone plain error, which is the standard of review here. If the Court doesn't have further questions on that, I will turn to the custodial portion of the sentence, which was also raised. Please do. Thank you. As the Court knows, the district court sentenced defendant to the low end of the advisory guideline term. The district court was aware of Booker. Booker was briefed to the Court. And so the Court reviewed 3553A factors, recognized that the guidelines were advisory and sentenced in having considered all of those factors. There is no question in this case, it's a very narrow challenge, there's no question that the procedures were improper, that the guidelines were improperly calculated. The challenge here, there are two challenges. The first is that the assessment of the various factors that the district court engaged in was improper, that the court, the district court gave too much weight to defendants' criminal history and insufficient weight to what was presented as defendants' drug addiction component or motivation for the underlying crimes. The Court clearly considered all of those factors. It made clear that it had reviewed and carefully thought about all of the issues in the case and came up with an assessment of the appropriate sentence. That is what a court is required to do, just because the court doesn't agree with the evaluation of the factors that defendant puts forward doesn't make the decision unreasonable. And it is, with due respect, this Court has already determined that it is for the district court to determine the appropriate sentence. In Manyweather, this Court said in the portion of the opinion, Manyweather 3, in the portion of the opinion addressing the reasonableness of the sentence under Booker, this Court said we probably wouldn't have come up with the sentence that the district court came up with. The district court in that instance gave a probationary sentence to a defendant whose guideline range was 21 to 27 months, based on having embezzled approximately half a million dollars from the United States. The Court said we wouldn't have come up with that sentence, but that's not our function. Our function is reasonableness review. It's a deferential function. Deference is implicit in the reasonableness analysis. Now, of course, defendant says that the district court did not, made a mistake, a procedural mistake, did not consider costs of prosecution as a, costs to the, I'm sorry, costs to the taxpayer of the sentence, and that that was a mistake in the proceedings or the procedures for the sentence. I would take exception to that for the following reasons. First, it is a fair reading of the record that the defendant waived that argument. When the defendant agreed with the court, the court said, I'm not sure this is an appropriate consideration, and defense counsel said, I agree with the court. So it's a fair reading, I would suggest, that this argument has been waived. It's also, I believe, a fair reading of the record that the court did consider the court's costs of imprisonment. The court said, I have been, this was an excellent argument by defense counsel. Many things have been brought to my attention that I wouldn't have otherwise considered. So I believe it's a fair reading that the costs of incarceration were considered. As a legal matter, however, if the court believes that it isn't waived and that a district court didn't consider it, I would suggest that as a legal matter, it would have been proper not to have considered it. And that's because even under Booker, in our new sentencing regime, which has opened up so many more factors for consideration by the district court, although the doors have been opened wide, they haven't been gotten rid of completely, and there are some limits on what the court may consider. And those limits are defined by 3553A. And in the sentencing statutes, the sentencing statutes make clear that costs of imprisonment are a factor in addition to the 3553A factors. So I would suggest that that indicates that costs of prosecution, costs of incarceration are not an appropriate factor. I would also suggest in response to defense counsel's argument that costs of incarceration are appropriate because they could suggest that home confinement is appropriate rather than imprisonment. That, I believe, goes to conditions of confinement and not the term of imprisonment, the length of imprisonment. And I see I've run well over my time, and I apologize for that. I think we said you could have another five minutes. Thank you. So you're under that time. If the Court has any further questions, I'll be happy to answer them. Otherwise, I will sit down. Thank you. All right. Thank you very much for your argument. And, Mr. Libby, we said we'd give you a couple of minutes of rebuttal, so you've got it. Thank you, Your Honor. Just in terms of ripeness and contingencies, the Williams case out of this circuit dealt with a situation where a defendant was given a condition that he had to take all medications prescribed, psychotropic medications prescribed. He had not been prescribed any medications, and the government argued that it wasn't clear that he would ever be prescribed any medications. But this Court said the issue was ripe, even though, you know, we don't know what may happen because we've not required violation of a specified supervised release condition to permit appellate review. And that's what it comes down to. You get to challenge the condition, and you don't have to violate it. And the government would have us have to violate it first, and that's what would take place if we have to wait until he, in fact, comes back into the country and then is violated and challenges it in a supervised release revocation proceeding. He doesn't have to wait that long. This is the time he gets to do it. Do we have a Supreme Court authority that says we should decide this question on the ripeness issue? Well, in Stethel v. Thompson, which dealt with the Georgia hand-billing statute and a challenge to that statute, what the Supreme Court said was a petitioner doesn't have to expose himself to arrest in order to make ripe a challenge to a statute. He claims deters the exercise of his constitutional rights. And I think, in essence, that's what's taking place here. He is challenging his constitutional rights, and he does not have to wait to be arrested for returning to the country and violating condition in order to be able to challenge the condition. And unless the Court has any additional questions.  It doesn't appear we're going to put you through more questions. Thank the Court. Thank you. So we thank Mr. Livian. We thank Ms. Katzenstein for the fine arguments. And the case of U.S. v. Tapia Romero shall be submitted. Good shot. Oh, Tapia, let's see. Can you turn that page? So maybe we'll have the same distinguished counsel in another case. Are you with us again today? Only the same distinguished defense counsel. Oh, I see. You're not with us on the other ones? Well, thanks very much for coming here to argue. We appreciate it.
judges: Tg Nelson, Beezer, Gould